Thank you, Your Honors, and good morning. My name is John O'Malley. I represent the Appellant Lamps Plus. As the Court is aware, we are here on the grant of a summary judgment in this copyright case. We have in the courtroom today the two lamps that are at issue. On the far left is the Lamp Plus lamp, and the lamp closer to me is the Dolan lamp. The Lamps Plus lamp is the copyrighted article.  The Dolan lamp is the accused device, or the infringing article. The District Court determined on summary judgment that there is no copyright infringement. She did not reach issues of validity below.  There is no question that the Lamps Plus lamp does have a copyright registration. The copyright registration was issued within five years of first publication, which under 410C of the Copyright Law provides prima facie validity of the copyright. Not irrebuttable, but prima facie. And, of course, we are here on a summary judgment review where all facts should be construed in favor of the non-moving party, Lamps Plus. We think that under any categorization of these lamps as sculptures, as derivative works, or even as compilations, although we do not assert that they are compilations, but even if they are compilations, we have tribal issues of fact as to infringement. In your complaint, how did you describe this? Under what theory? In the complaint, I think we simply alleged copyright infringement. Didn't you also say it was a compilation? No. In the summary judgment briefing, the issue came up. Tell me about the complaint. I'd have to go back and look at the complaint, Your Honor. Will you check that before you come back? I will. But it is the case by the time of the summary judgment motion that there's an argument and I'm trying to track the position, excuse me, that at that stage, the case that you argued that it was either original or a compilation, we argued at the summary judgment stage, the moving party, the defendant below, asserted it was a compilation. We argued back and at page 379 of the excerpt of record argue that it is a sculptural work, not a compilation, but even if it is deemed a compilation, there is infringement. So you weren't arguing for that, but if you accept the premise that it was, then still there's protection. Exactly, Your Honor. And that's been consistent throughout. And that responds, I think, to this Court's order of about a week ago to address the questions of judicial estoppel and ask the parties to be prepared to do that. This Court's decision in the Hamilton case establishes for the Ninth Circuit that judicial estoppels in position requires that the court below have relied on and accepted the position advanced. Obviously, we lost below. The court did not rely on our position. It rejected it unhappily so that there is no application for the rules of judicial estoppel in this case. Now, if it's wide open to any characterization, what is this beast? Is it sculpture? Is it derivative? Is it compilation? Sculptural works are ones which are 3D like this. Sculptural works are clearly protected by the copyright law. And sculptural works have been examined by a variety of courts in this context. We have presented to this Court numerous cases in which a sculptural work is also a useful article and has obtained appropriate copyright protection. One of the cases we've brought to this Court's attention is a case emanating out of the District of California from Judge Wardlaw when she was on the District Court, finding that a watch, a wristwatch with an ornamentation on the wristwatch, the letter G and various fancy designs, was a useful article, true, but capable of copyright protection. And she distinguished the useful article law like this. Clearly a wristwatch has a crystal, a bezel, a stem. That's the watch. The ornamentation is what's added to it. In the area of lamps, undeniably these are lamps. They have sockets. They have plugs. They have wires. But they also have, as you can see, a large degree of ornate embellishment to them that is separable from their physical characteristic, their functional characteristic as a lamp. And so for that we believe it comes within the ambit of sculptural work protection. It can also be a derivative work. Under either of those categorizations in this circuit, the appropriate test for infringement is the extrinsic-intrinsic test emanating from the Sid and Marty Croft case through Shaw and the other more recent matters. That test holds that if there is extrinsic similarity, that is, if the objective characteristics that are decorative or the like are similar, then that's where the district court must stop and say, okay, if they are similar, it goes to the jury. If any reasonable jury could conclude that subjectively, intrinsically, the protected aspects are similar. We think it's clear. In fact, the district court agreed with us that the lamps were very similar. And I think any inspection of these lamps would conclude there are obvious similarities. There's no question of copying here. The defendant went to Lamps Plus's stores numerous times, bought one, made a picture of it, sent it to his overseas manufacturer and said, use it as a reference, and this is what came back. So there's no doubt as to the copying. And certainly tribal issues there at a minimum. The question then is, are the protected expression aspects of it copied? Here we have an admission now in this Court, although not so forthrightly below, that the filigrees are absolutely identical. But the other pieces are said not to be identical. I mean, as I understood the concession, it was if that was the one out of the five pieces that was the same, the others are different. Yes, they continue to suggest that the others are different. If you look at the bases, Mr. Swanson, who designed this for Lamps Plus, testified they're 99% similar and you'll have a hard time finding any meaningful distinctions there. The shades are both etched, frosted, similar, though not identical. And the caps and finials are somewhat identical, but do not detract from the overall highly stylized Victorian style that is attempted to be evoked. Well, that may get to the harder issue, at least for me. The defendants have suggested that what you're really trying to do is claim an idea. The idea of the ceiling fixture being converted into a table lamp, the Victorian style, the filigree, the etched globe, or I've already forgotten the term, the glass part. And trying to lay claim not to the exact expression of it, but to variations on a theme, which in defendants' eyes is an attempt to claim an idea, something you're not entitled to do. What's your response to that? Exactly. There's no question we cannot claim an idea. We do not believe we are doing that. And the proof of that is in the materials submitted below by the defendants. They submitted numerous catalog photographs of Victorian-style table lamps, some of them even labeled Victorian-style table lamps. And there are many in there, we've cited them in our briefs, that are not similar and are not infringing. For example, the stems are different, the filigrees are different, the shades are significantly different. So we have not merged the concept of an ornate Victorian piece and taken the entire subject matter area or the entire competitive realm. What we've asked for is simply that this piece or insubstantial variance be covered. And so if the extrinsic-intrinsic test applies to infringement, if it's a sculpture or derivative work, then you look to the similarities of the extrinsic parts, and clearly these are similar with the swirls, the shaping, the materials, the coloring. As the Cavalier case teaches us, those are the things that should be looked at in connection with a sculptural work examination, can be looked at in a sculptural work examination. And when you do that, then you must confront the question whether a reasonable jury could so conclude that they're similar in their protected expression. And I think it's clear that there's tribal issues to that. So that's where we come down. Now, one case that was cited recently, I think, in the last brief that merits my discussion, it's a very recent case, is this court's decision in Satava. It is a sculptural work case. And that case is distinguishable from ours, we believe, and in fact is in some sense is helpful to our position in this case. Satava was a situation where an artist made glass works, glass in glass, actually a glass inside of another glass, blown together in the air and made them into jellyfish. And this court held that, no, you've merged here the notion of a jellyfish, the physiological aspects of an animal, to the idea. But the court did hold out an area of copyright protection where it said that certain aspects of this work that are not dictated by the physiology of a jellyfish and are not dictated by the requirements of the glass in glass molding should be protected, are protected. Now, in this case, we don't. Typically, the court described it as a thin copyright that's protected against only, I think the phrase was virtually identical copying. Is it your case that what we're talking about here is that virtually identical copying? I think our realm of, I think our infringement test is a bit broader than that in this case because of the distinctions between this case and Satava. In Satava, you were dealing with two restrictions you don't have here. In Satava, you had the physiology of a live animal. And there are numerous cases which either extend, which decline to extend copyright protection in such situations or give very, very tight copyright protection because you can't have a monopoly on a jellyfish, the argument goes, or on a jewel-encrusted bee pin or animal-like characterizations. We don't have nothing animal-like in these. The other distinction between this case and Satava is that in Satava, you had a restriction imposed by the medium in which the artist was working. In the Satava case, you have a situation where you have this glass in glass molding. And there are limitations, according to the Court's opinion, to how much you can do with that medium. We don't have that limitation here. The fanciful decorative aspects of these pieces are not limited or dictated in any significant way by the medium that is used. And so I don't believe that the virtual identity test of Satava in that context applies so narrowly in this context. I think here we have to look to the broader test of infringement of sculptural works, which is set forth in the line of cases dealing with the extrinsic-intrinsic test. Even if, and I say this arguendo, even if we go to sculptural, excuse me, to compilation theory for the analysis, we believe the Court still erred because under compilation theory, the leading case in this circuit is the Harper House case. There the Court adopted the bodily appropriation test, which the Court also said in that case, to phrase it a slightly different way, means a copying or unauthorized use of substantially the entire item. Substantially the entire item was the test adopted in Harper House. I don't think there's any clearer example of a copying of substantially the entire item, particularly in the protectable aspects. In this case, I think this presents that case. The district court, however, applied, and her language was very clear in the order, applied an exact identity standard. They had to use exactly the same pieces, is what she said. We believe that was error, that the Court should not have limited this copyright to the narrow confines of exact slavish reproduction, but rather there must be some margin, even with the narrowest of copyrights, there must be some outer margin to the scope of the copyright. With that, I'll reserve the remaining time. My name is Steve Ford, and I'm representing Dolan. You can go ahead and leave me there. That's fine. First of all, the one thing that I'm supposed to fail to say to any of you, that every single part in their lamp is a preexisting lamp part or light part that was made for one purpose, and that purpose was to compile it together into a lamp. They talk about the lamp base. This is one of the most popular, and it's called, it's referred to as a Tiffany-style base. It's one of the most popular Tiffany-style bases that exist. The filigree, and this is the filigree. The Victorian-style filigree is one of the few that was even commercially available. Every single one of these parts is preexisting, and the one thing that they failed to mention, that with preexisting works, i.e. a compilation, an author only has rights to his contribution to those works. In this case, he made no individual contribution to any of the individual works. These are all available in Lamp Catalog, each one of these parts. There's relatively few items that were combined together, at the most, in this case, five, although Lamps Plus admits in their briefs that, indeed, they had seen prior Tiffany or Victorian-style light shades that were used in lighting pictures, and they're aware of the, obviously, of the preexisting Tiffany-style base, and they combined those two together. The fact that there's a relatively few number of preexisting parts that were combined together, and Congress has noted that there should be some consideration and there's a concern if a limited number of preexisting parts were combined together to be given copyright protection, they were concerned about that. In addition, the rules in the Copyright Office say they will not straight out give copyright protection for an article that has less than four, a compilation that's less than four parts. Now, compound that with the fact that these are not just random articles. These are useful articles. These are lamp parts that were combined together to make a useful article, particularly a lamp. Now you have a relatively few number of preexisting parts that were combined together for a functional purpose to create a lamp. And now you find there should not, based on this, there should be no copyright protection for this part. Then compound on top of that that a useful article, a three-dimensional useful article based on 17 U.S.C. 101, cannot have copyright protection for anything unless that artistic work is separable from the useful article itself. The things that arguably would be copyrightable would be, for example, the etching on the glass. Theirs has a floral design to it. Ours has a scallop shape. But the floral design of that glass would arguably be a protectable copyrighted work. LampsPlus didn't create that. The only thing they did is put together lamp parts to make a lamp. So anything that would be arguably separable from the useful article was not a contribution made by LampsPlus. And under 17 U.S.C. 103, you cannot have an artist that does not have copyrights to works that he didn't create, whether it be a compilation or derivative work. Speaking briefly about the issue of the derivative work, LampsPlus brings this up for the first time on appeal. First of all, I think this Court made it clear in the Sadova case, the jellyfish case, that you need to look at the contribution made by the artist to determine whether the virtual identical copying standard should be used or the substantial similarity standard, not a category of whether it's identified as a derivative work or a compilation. In the Sadova case, that's exactly what this Court said, was that the copyright contribution made by the author was thin, and therefore, a virtual identical copying standard should be used. They didn't first go and figure out if the jellyfish was a compilation or a derivative. They looked at what the contribution was made by the artist. And in that case, it was thin, and therefore, they used the virtual identical copying standard, which is exactly what the district court did, and therefore, they didn't there. In addition to that, this was the first time that this issue was brought up on appeal. Specifically, what LampsPlus stated in their opposition to our summary judgment motion was, even if the Victorian Tiffany is not an original sculptural work, it is a protected compilation of preexisting works. I think it's clear that they made a position in the district court that this was a compilation. They also admitted that in answers to interrogatories. So then the question comes down to, are they then stopped from making this argument at the district, at the appellate court level? Yes. Based on the rules. Even though they didn't win with their argument? Well, I don't think that's necessarily what is required. I think they court adopted the position, and I think that's what's important. I think there's one case that I saw that said, even though the party didn't win, they did win in having the court adopt their position, and that was the situation here. And the whole idea behind this judicial estoppel is to maintain the integrity of the court. So just because you don't win doesn't necessarily mean you wouldn't get judicial estoppel, because if that were the case, then somebody could go and assert a position, and even though they don't win, they can do what they're doing now, is assert another one. So the integrity of the court would be at stake, because the district court adopted both of our positions, that it was a compilation, and now they're arguing that the district court erred in adopting the position that they asserted. So I think judicial estoppel applies in this case. In addition to that, I also think there's another rule in this Court that if an issue is not properly brought up at the district court level, that it won't be heard by the appellate court. And the issue of whether this is the derivative of work or not was not, clearly not brought up to the district court. Not only was it not brought up, the opposing position was brought up, and that was that it was a compilation. Is it your position that the district court accepted the proposition that it was a compilation, but also concluded that it flunked the test for a compilation? Yes. Yes. My position is that this is a compilation. And I'm talking about the district court now. Okay. You're saying that it used the term adopted. I'm using accepted. Okay. Basically, you're saying the district court either adopted or accepted the theory. Yes. That it was a compilation, but said it didn't meet the test for a compilation to get a copyright. To. Or infringement. For infringement. That's right. That's right. And it's our position that it not only — it wasn't a virtual identical copy. The Court adopted that position, yes. Not only did it not — and then it found that it was not copyrightable — or it found that it wasn't — there wasn't an infringement. And it's our position that a compilation of five LAMP parts together does not constitute copyrightable subject matter. One further point in regards to the validity or the invalidity of their LAMP. There should be no presumption of validity in this case, because the copyright registration left that material information. The copyright registration requests all preexisting works be identified in the registration. In this case, that box was left blank. The Copyright Office had no basis for making a reasonable decision whether it was a copyrightable subject matter or not. They thought, as far as they knew, these were all original parts to LAMPS Plus. And in addition to that, one of the pages from the copyright registration was just a picture of the LAMP base all by itself with a copyright registration on it. This would have misled the Copyright Office to think that that part in and of itself was original to LAMPS Plus. But as LAMPS Plus now admits, that clearly was not the case. LAMPS Plus says that it did not intentionally leave out that information. Is that validated if it was innocent? Well, that would come down — Overlooked? Yeah. Well, that issue would come down on an issue of whether it's — as far as the issue of whether there's a presumption of validity, it shouldn't matter. But when it comes down to an issue of whether this is unenforceable, then we would want to — we would have to probably go through further factual issues regarding that. But as far as just the basic premise that this is not a presumption of validity, based on the Russ Berry case, I think it's clear that it doesn't matter whether they intentionally left it out or not. The fact was is that they did leave out material information. The fact that each one of these parts was preexisting — a preexisting light part was extremely, obviously, material to the fact of whether this was going to be issued or registered as a valid copyright. Now, a couple of — in addition, a couple of — but with all that said, it is a compilation based on the plain meaning of the statute. A compilation is a combination or assembly of preexisting materials to create a new work. A derivative, on the other hand, is recasting, transforming, or adapting one or more preexisting works. None of these parts were modified in any way, any kind of a transformation. LAMPS PLUS suggests that just the fact that you combine preexisting lamp parts together to create a lamp is a derivative in and of itself. If that were the case, then every compilation would be a derivative work. And there's also a concern that if this was considered a derivative work, that then based on 17 U.S.C. 106, which says that a copyright owner has rights to all derivative works, that somebody could go — a lamp reseller could go and purchase parts out of a lamp catalog like these, assemble them as a lamp and legally buy those parts and then still be liable for copyright infringement as a derivative work. So there's some concerns whether this — I don't think this could be considered a derivative work based on those reasonings. A few comments with regards to — with regards to attorney's fees. The district court said that there was — this wasn't a frivolous or a case brought in in bad faith, although the district court also said that she believed that she did not — she would not consider the issues regarding invalidity. And based on that, we don't think that they could have — the district court could have came up with a rational or sufficient reason to determine whether this was frivolous or not, because they didn't consider some of the primary issues regarding that, and that is the fact that they submitted a copyright registration without identifying it as a preexisting compilation. For existing works. In addition to that, the district court did not — although they considered the proper elements, they didn't give them any weight to the issues regarding deterrence. And deterrence in this matter, I think, is extremely important. There's an interest of the copyright statutes to go and promote only valid copyright registrations. There's an interest of not having copyright registrations that are incorrectly registered and registering of invalid works that shouldn't be given copyright protection. There's a — there should be a deterrence for that. LAMS Plus has admitted that they file hundreds of copyright registrations, and they, in this particular matter, this copyright registration, the author of it didn't even review it before it was registered. So there should be some kind of deterrence to LAMS Plus for having to — for filing hundreds of copyright registrations without reviewing them for accuracy. And then there should be some kind of deterrence for them to asserting those on people, who would then have to pay the cost to go and defend that, to bring those true facts into light, those facts being that these are preexisting works. Some other smaller manufacturer, somebody that didn't want to pay the expense of fighting this case, they just wouldn't stop making the lamp, and that's contrary to the copyright statutes. Regarding the — another issue is the objective unreasonableness of a position. LAMS Plus is stating that this is a wholly original sculptural work. That's what they stated in their complaint. That's what they stated in the — in regards to the opposition or summary judgment motion. That is an objectively unreasonable position. This is clearly not a wholly original sculptural work. It's made entirely of lamp parts that are preexisting and are available — commercially available. Thank you. Mr. O'Malley. Thank you, Your Honor. First, to respond to Judge Alicon's question about the complaint, I've taken a look at it. We do not allege it was a compilation. Paragraphs — paragraph 11 on page 3 of the record and paragraph 17 on page 4 of the record both allege that it is a three-dimensional sculpture in almost identical language. And I've scanned the entire complaint quickly in the last few minutes, and I don't see any reference to compilation in it. Thank you. The citation, Mr. Ford — Go ahead. No, I'm sorry, Your Honor. The citation Mr. Ford gave us a moment ago to the brief we filed below. Again, that's record page 379 where we state, However, as stated above, the Victorian Tiffany is not a compilation. It is an original sculptural work. Moreover, even if the Victorian Tiffany were a compilation — and then we go on. I think it's clear we were arguing in the arguendo mood, if you will. Will you help me on a question I have in my mind? Out of my grandmother's attic, I found a Tiffany lamp with the colored glass, which in shape looks very much like those two. What is the creative expression that was put into the lamps plus lamp, which differs from, for example, my grandmother's Tiffany lamp? Surely. The creative steps that were taken, as the record discloses, in creating the lamps plus lamp, was that Mr. Swanson, who has been designing lamps for 20 or 25 years, saw that there was a trend in lamp making emanating, I think he said in Spain, to use flush mounts, which are like the light up there, flush against the ceiling, reversing them. He saw that as — and it was coming out in the Tiffany context, apparently. He wanted to use that to make a Victorian, so he looked for all the available and potentially non-available — in other words, he testified he was thinking about designing his own parts but went to the marketplace first and looked for shades, filigrees, bases, and the like, to try to get a combination that he saw. He went through several iterations of this with his overseas manufacturers, and that's what finally came up with the lamps. So the creative process was a discernment of what he said were hundreds of combinations of different pieces in order to try to come up with the look he wanted. The story sounds close to seizing upon an idea, and it was a good idea. And you don't see — the tops of those look like the things you see in the ceiling, and you don't usually see lamps that look — that just take the ceiling and turn it upside down. But that idea is not protectable by itself. It's the expression of it that is. And we've just heard that — and it seems to be the case — you have either something between five and two parts here put together. Now, is that enough to create something that protects more than the exact articulation that's present in front of us? We think it does, and it takes two steps to get there, if you will. The first step is the creative expression. Has the idea emerged? No, certainly the notion of turning a flush mount — and there's probably a million different kinds of flush mount — and turning that upside down, we're not seeking protection for that concept at all. But getting the precise parts to do it, those steps involve a certain amount of creativity. We believe enough originality to meet the restrictions of the Copyright Act, and we've seen cases where there's far less originality that's passed muster. To get those — now, if that's the case, in other words, if you can copyright something based on those selection out of many hundreds of parts into a sculptural work, if you can do that, then you get to the next question. Okay, what test of infringement do you apply? We don't think it's a compilation. We've alleged and argued everywhere that it's a sculptural work, and if you go down to a museum here and see more modern art, you'll see pieces that you recognize within that modern art put together. There's nothing in the copyright law that says that a work needs to be cast for the first time by the artist. It can be bits and pieces of different things that existed in life in the past, and if so, then we get to sculptural protection, and then we get to what we think a tribal issues of fact. I see my time's up. Thank you very much, Your Honors.  The case is submitted.
judges: Browning, Alarcon, Clifton